# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 17-1553V

| | |
|---|---|
| ELAINE CLARK, | **UNPUBLISHED** |
| Petitioner, | |
| v. | Special Master Katherine E. Oler |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | Filed: February 9, 2023 |
| | Interim Attorneys' Fees and Costs. |
| Respondent. | |

*Phyllis Widman*, Widman Law Firm, LLC, Northfield, NJ, for Petitioner
*Ryan Pyles*, U.S. Department of Justice, Washington, DC, for Respondent

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On October 18, 2017, Elaine Clark ("Petitioner") filed a petition seeking compensation under the National Vaccine Injury Compensation Program ("the Vaccine Program").[2] Pet., ECF No. 1. Petitioner alleges that she developed arthritis, rheumatoid arthritis with associated polyneuropathy/small fiber neuropathy, exacerbation of carpal tunnel syndrome, and a left shoulder injury from the influenza ("flu") vaccination she received on December 6, 2015, or that her condition was significantly aggravated by the flu vaccine. Pet. at 1.

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I intend to post this Decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). **This means the Decision will be available to anyone with access to the internet.** As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however the parties may object to the Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the Decision in its present form will be available. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

1

Petitioner filed a Motion for Interim Attorneys' Fees and Costs on August 30, 2022, requesting a total of $104,528.21. Fees App. at 4, ECF No. 96. Respondent did not file a response.

I hereby **GRANT** Petitioner's application in part, and award a total of **$94,148.21** in interim attorneys' fees and costs.

I.  **Legal Standard**

   A.  **Interim Attorneys' Fees and Costs**

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.,* 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Even though it has been argued that a petitioner must meet the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- special masters have instead treated these criteria as possible factors in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs if the special master finds that a petitioner has brought his petition in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148 (2012), at 154; *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

   B.  **Good Faith**

The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Such a requirement is a "subjective standard that focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

**C. Reasonable Basis**

Unlike the good-faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must at least be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis…." *Id.* at 286. The Court in *Chuisano* found that a petition which relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. Aug. 19, 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis.").

Temporal proximity between vaccination and onset of symptoms is a necessary component in establishing causation in non-Table cases, but without more, temporal proximity alone "fails to establish a reasonable basis for a vaccine claim." *Chuisano*, 116 Fed. Cl. at 291.

The Federal Circuit has stated that reasonable basis "is an objective inquiry" and concluded that "counsel may not use [an] impending statute of limitations deadline to establish a reasonable basis for [appellant's] claim." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2017). Further, an impending statute of limitations should not even be one of several factors

the special master considers in her reasonable basis analysis. "[T]he Federal Circuit forbade, altogether, the consideration of statutory limitations deadlines—and all conduct of counsel—in determining whether there was a reasonable basis for a claim." *Amankwaa v. Sec'y of Health & Hum. Servs.*, 138 Fed. Cl. 282, 289 (2018).

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.*, 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury).

When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II. Discussion

### A. Undue Financial Hardship

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by petitioner's counsel. *Kirk*, 2013 WL 775396, at *2 (finding "the general principle underlying an award of interim fees was clear: avoid working a substantial financial hardship on petitioners and their counsel."). I also note that the COVID-19 pandemic has had a significant impact on the United States economy and such impact has been recognized by this court. *See Monge-Landry v. Sec'y of Health & Hum. Servs.*, No. 14-853V, 2020 WL 4219821 *5 (Fed. Cl. Spec. Mstr. Jun. 30, 2020) (recognizing the COVID-19 pandemic's continued disruption of the airline industry in its calculation of appropriate interim fees). Counsel for Petitioner pleads, "[t]he facts and circumstances of the instant case impose undue hardship on the petitioner. There is an outstanding balance due for medical records, the hearing transcript and Dr. Arthur Brawer." Fees App. at 1-2.

This case has been in litigation for six years and an entitlement hearing has been held. Given these unprecedented economic circumstances, and the time already spent litigating this case, I find that the Petitioner would suffer undue hardship in the absence of an award of interim attorneys' fees and costs.

### B. Good Faith and Reasonable Basis

Respondent did not raise any objection to the good faith or reasonable basis for this claim, as he did not file a response to Petitioner's motion. I find that the petition was filed in good faith.

With regards to reasonable basis, Petitioner has submitted seven expert reports from Dr. Arthur Brawer, who is board certified in rheumatology. *See* Exs. 19-23, 27; *see also* Ex. 36 (hereinafter "Brawer CV"). Dr. Brawer testified at the August 24, 2021 entitlement hearing regarding Petitioner's injury. Dr. Brawer opined that Petitioner's clinical picture "was highly suggestive of Rheumatoid Arthritis that had been directly initiated by the influenza vaccination on December 6, 2015." Ex. 19 at 2. Dr. Brawer added that "[i]t has been known for well over 20 years that there exists a cross reactivity between routinely used vaccine materials and self-antigens in the body," citing to the theory of molecular mimicry. *Id.* at 2. I find this evidence is sufficient to satisfy Petitioner's burden with respect to reasonable basis.

As there is no other reason to deny an award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs in this instance.

### C. Attorneys' Fees

Petitioner requests a total of $90,393.75 in attorneys' fees. Fees App. at 3.

1. <u>Reasonable Hourly Rate</u>

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

---

[3] The 2018 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.
The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.
The 2020 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf
The 2021 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2021-PPI-OL.pdf
The hourly rates contained within the schedules are updated from the decision in McCulloch, 2015 WL 5634323.

Petitioner's attorney, Ms. Phyllis Widman requests an hourly rate of $300.00 for work performed between 2016-2017; $350.00 for work performed between 2018-2020; $375.00 for work performed in 2021; and $400.00 for work performed in 2022. Additionally, Ms. Widman requests $187.50 per hour for travel completed in 2021, half of her hourly rate for that year. Fees App., Ex. A.

Ms. Widman's requested rates are consistent with *McCulloch* and with what she has been previously awarded in the Program. *See, e.g., Walters v. Sec'y of Health & Hum. Servs.*, No. 15-1380V, 2022 WL 1077311 (Fed. Cl. Spec. Mstr. Feb. 23, 2022); *Solak v. Sec'y of Health & Hum. Servs.*, No. 18-1674V, 2021 WL 3404226 (Fed. Cl. Spec. Mstr. Jun. 30, 2021); *Neal v. Sec'y of Health & Hum. Servs.*, No. 17-2021V, 2019 WL 4854366 (Fed. Cl. Spec. Mstr. Sep. 9, 2019); *Maxwell v. Sec'y of Health & Hum. Servs.*, 2018 WL 5095119 (Fed. Cl. Spec. Mstr. Sep. 17, 2018). I find the requested rates to be reasonable and that no adjustment is warranted.

2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993). However, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd* No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cl. 1993). It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), mot. for rev. denied, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at *26.

Petitioner's counsel has provided a breakdown of hours billed. *See* Fees App., Ex. A. I find the hours to be largely reasonable, however I find a reduction is necessary due to excessive time billed for reviewing CM/ECF docket notifications for items that were filed by Ms. Widman as well as the Court's non-PDF Scheduling Orders. Although these entries were typically billed for 0.1 or 0.15 hours (6-10 minutes), the total amount of these billing entries creates an overall unreasonable amount of time spent reviewing Petitioner's own filings and extremely short orders. Ms. Widman has been reduced for this previously, and I shall do the same here. *See*, *e.g., Seylaz v. Sec'y of Health & Hum. Servs.*, No. 18-733V, 2022 WL 1868377 at *3 (Fed. Cl. Spec. Mstr. May 13, 2022); *Walters*, 2022 WL 1077311 at *5; *Maxwell,* 2018 WL 5095119 *3.

These entries total 0.7 hours in 2017, 1 hour in 2018, 1.3 hours in 2019, and 1.2 hours in 2020. Applying Ms. Widman's hourly rates for those years, the total reduction to the requested amount is $1,780.00.

Total attorneys' fees to be awarded: **$88,613.75**

### D. Reasonable Costs

Petitioner and her counsel request a total of $14,134.46 in costs. Specifically, Petitioner requests $3,076.85 for money she personally expended on mailing expenses, copying expenses, and half of Dr. Brawer's fee for testimony at the entitlement hearing. Fees App. at 3. Petitioner's counsel requests $11,057.61 for the Court's filing fee, mailing expenses, medical records requests, Dr. Brawer's reports and testimony, and the transcript from the entitlement hearing. *Id.* at 3-4. Documentation was provided for the Court's filing fee, medical records requests, copying expenses, and mailing expenses, thus I grant these costs in full. I discuss the remaining expenses below.

   1. Petitioner's Expert Costs for Dr. Arthur Brawer

Petitioner and her counsel request a total of $11,600.00 for Dr. Brawer's reports and testimony at the August 24, 2021 entitlement hearing. In his invoices, Dr. Brawer charges a flat rate for his reports and testimony. No hourly rate has been provided. Dr. Brawer was compensated a total of $6,000.00 for his one-day testimony, with Petitioner personally paying half, or $3,000.00 herself. Ms. Widman has paid $7,850.00 for Dr. Brawer's reports and testimony, and $750.00 remains outstanding for his "3rd supplemental report." Fees App. at 3-4.

Dr. Brawer received his medical degree from Boston University and is board certified in rheumatology and internal medicine. Brawer CV at 3, 4. As mentioned above, Dr. Brawer provided seven reports, however they range from 1-4 pages each. *See* Exs. 19-23, 27, 53. Fees for experts are subject to the same reasonableness standard as fees for attorneys. *See Baker v. Sec'y of Health & Hum. Servs.*, 99-653V, 2005 WL 589431 at *1 (Fed. Cl. Spec. Mstr. Feb. 24, 2005). Dr. Brawer

7

charged $750.00 for his "3rd supplemental report" that was one page long. *See* Ex. 53. No doubt Dr. Brawer had done additional medical research to bolster his report, but his lack of billing records makes it near impossible to ascertain the effort put in or to assign a value to this report. Dr. Brawer submits an invoice for each of his reports, and does not request an hourly rate. This is not standard practice in the Vaccine Program where experts are subject to the same requirements as attorneys in order to receive compensation. Other Special Masters have warned and refused to compensate Dr. Brawer for his lack of clear billing. *See, e.g.*, *Brunker v. Sec'y of Health & Hum. Servs.*, No. 18-683V, 2023 WL 21255 (Fed. Cl. Spec. Mstr. Nov. 29, 2022); *Drobbin v. Sec'y of Health & Hum. Servs.*, No. 14-225V, 2022 WL 1515024, at *4 (Fed. Cl. Spec. Mstr. Apr. 28, 2022); *Moses v. Sec'y of Health & Hum. Servs.*, No. 19-739V, 2020 WL 6778002, at *4 (Fed. Cl. Spec. Mstr. Oct. 23, 2020); *Hanson v. Sec'y of Health & Hum. Servs.*, No. 18-590V, 2020 WL 5628694, at *2 fn. 3 (Fed. Cl. Spec. Mstr. Aug. 24, 2020); *Whelan v. Sec'y of Health & Hum. Servs.*, No. 16-1174V, 2019 WL 5290521, at *3 fn. 6 (Fed. Cl. Spec. Mstr. Sept. 11, 2019). Given the length of his reports and the lack of hourly billing, I cannot assess whether Dr. Brawer should be awarded what he requests. Ms. Widman has been warned previously that Dr. Brawer's billing practices do not comport with the Court's standards and has been previously deferred an award of Dr. Brawer's interim fees. *See Drobbin*, 2022 WL 1515024; *Moses,* 2020 WL 6778002; *see also Nifakos v. Sec'y of Health & Hum. Servs.*, No. 14-236V, 2018 WL 7286553, at *5 (Fed. Cl. Spec. Mstr. Dec. 12, 2018) (where I deferred an award of expert fees when the expert's invoice was not detailed).

Accordingly, I will defer Dr. Brawer's expert fees until he can provide a bill that documents the hours spent writing his reports and the time spent testifying.[4]

Total costs to be awarded: **$5,534.46**

### III.    Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim fee and cost awards, and based on the foregoing, I **GRANT** Petitioner's application in part for a total of **$94,148.21**, as follows:

A lump sum in the amount of **$91,071.36**, representing reimbursement of Petitioner's interim attorneys' fees and costs in the form of a check jointly payable to Petitioner and her attorney, Ms. Phyllis Widman, and

A lump sum in the amount of **$3,076.85**, representing reimbursement of Petitioner's costs in a form of a check payable to Petitioner, Elaine Clark.

---

[4] I apply this deferral only to Petitioner's counsel's expert costs. Petitioner should not be penalized for the inadequacies of Dr. Brawer's billing practices. Additionally, Dr. Brawer did provide a full day of testimony so Petitioner shall be reimbursed for her payment of Dr. Brawer's testimony.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[5]

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.